# IN THE UNITED STATES DISTRICT COURT

# FOR THE DISTRICT OF NEW MEXICO

ROCHELLE BREWER,

        Plaintiff,

vs.                                                      Civil No. 00-0059 LH/WWD

KENNETH S. APFEL,
Commissioner of Social Security,

        Defendant.

## MAGISTRATE JUDGE'S PROPOSED FINDINGS AND RECOMMENDED DISPOSITION
**Proposed Findings**

    1. This matter comes before the Court upon Plaintiff's Motion to Reverse and Remand for a Rehearing, filed August 2, 2000 **[docket # 6]**.[1] The Commissioner denied Plaintiff's request for Social Security Disability Insurance, Supplemental Security Income, and Disabled Insured Widows Benefits.

    2. Plaintiff was 61 years old at the time of the administrative decision, and 57 years of age at her alleged date of onset (February 5, 1994), making her an individual of "advanced age" at all times relevant to her claim. She has a general equivalency degree (GED) and vocational training as a Licensed Practical Nurse, and has worked in the nursing field. Plaintiff alleges a disability due to depression and pulmonary coccidioidomycosis (also called Valley Fever, see Tr. at 233, 316-18), which she alleges causes shortness of breath, headaches, skin disease, arthritis, frequent infections, and bronchitis.

---

[1] The motion package was actually filed with the Court on August 2, 2000, although the motion was served on May 19, 2000.

3.  After conducting an administrative hearing, the Commissioner's Administrative Law Judge ("ALJ") denied the applications, concluding that Plaintiff had severe impairments due to status post gallstone pancreatitis, cholecystectomy and malingering, but that she nevertheless had the residual functional capacity ("RFC") to perform some light and sedentary work.  The Appeals Council affirmed the ALJ's decision.  Plaintiff now seeks review of that final decision pursuant to 42 U.S.C. §405(g).

4.  The standard of review in social security appeals is whether the Commissioner's final decision, in this case the ALJ's decision, is supported by substantial evidence.  Thompson v. Sullivan, 987 F.2d 1482, 1487 (10th Cir. 1993) (citations omitted).  Additionally, the Commissioner's final decision can be reversed if the ALJ failed to apply the correct legal tests.  Id. (citation omitted).

5.  Plaintiff raises the following allegations of error with respect to the ALJ's decision: (1) the ALJ misstated the issue in this case; (2) the ALJ improperly assessed Plaintiff's Mental Impairment; (3) the ALJ improperly evaluated Plaintiff's complaints of disabling pain; (4) the ALJ incorrectly concluded that Plaintiff could perform light work; (5) the ALJ erroneously found that Plaintiff could perform work above her RFC level; (6) the hypothetical questions the ALJ posed to the vocational expert were incomplete; and (7) Plaintiff should be found disabled based on the grids.

6.  "To qualify for disability benefits, a claimant must establish a severe physical or mental impairment expected to result in death or last for a continuous period of twelve months which prevents the claimant from engaging in substantial gainful activity."  Thompson at 1486 (citing 42 U.S.C. §423 (d)(1)(A), §1382c(a)(3)(A)).  Social Security Regulations require the Commissioner

to evaluate five factors in a specific sequence in analyzing disability applications.  Id.; see 20 C.F.R. §§ 404.1520(a - f); 416.920.  The sequential evaluation process ends if at any step the Commissioner finds that the claimant is disabled or not disabled.  Id. (citations omitted).

    7.   Plaintiff was diagnosed with Valley Fever in 1989.  Tr. at 316.  She stopped working in 1994 because she kept making errors when handling money, and could not handle patients or the stress.  She states that she can walk about a block and a half, sit or stand for 30 minutes at a time and lift up to 10 pounds.  Tr. at 91-92.

**First Alleged Error**

    8.   Plaintiff alleges that the ALJ misstated the issue in this case because Plaintiff's mental impairments were not included, and because a diagnosis of malingering should not have been included. There is no merit to this allegation.  Even if the issue was misstated by the ALJ because it did not include all of the alleged impairments, the error is harmless, since the ALJ properly evaluated and considered all of the impairments.  See Benskin v. Bowen, 830 F.2d 878, 883 (8th Cir. 1987); see Mays v. Bowen, 837 F.2d 1362, 1364 (5th Cir. 1988) (arguable deficiency in opinion-writing technique is not a sufficient reason for setting aside an administrative finding where deficiency probably had no practical effect on the outcome of the case).

**Second Alleged Error**

    9.   Plaintiff contends that the ALJ improperly assessed Plaintiff's Mental Impairment, specifically that a diagnosis of malingering is not supported by the record, and that Ms. Brewer's depression is a severe impairment.[2]  The ALJ stated that Ms. Brewer's mental impairment not

---

[2] Included in Plaintiff's allegation of a mental impairment is a short-term memory loss that affects her ability to concentrate as well as her ability to remember and carry out instructions.

only did not meet a listed impairment but was "non-severe." Tr. at 40. While an impairment may not satisfy the requirements to be considered a listed impairment, it may nonetheless be severe enough to have a significant effect on a claimant's ability to work.

10. When there is evidence of a mental impairment that allegedly prevents a claimant from working, the Commissioner must follow a special procedure for evaluation of mental impairments set forth in 20 C.F.R. § 404.1520a. See Cruse v. U.S. Dep't of Health & Hum. Serv., 49 F.3d 614, 616 (10th 1995). This procedure involves not only looking to see if an impairment falls within Parts A and B of a listed impairment, but also completing a Psychiatric Review Technique Form ("PRT") for a determination of a claimant's *mental* residual functional capacity. Id. at 618.

11. The ALJ considered the reports of Dr. Abbott, a family practitioner who reported that Plaintiff's depression left her "unable to pursue gainful employment," and opined that the degree of impairment was moderate to severe. Tr. at 38, 253. Dr. Tucker saw Plaintiff in 1994 and 1995 for bronchitis, and that despite her chronic pulmonary problems, Plaintiff continued to smoke a pack a day. Tr. at 336. Dr. Tucker mentioned that Plaintiff was using Trazodone and Paxil for depression and that she was seeing Dr. Abbot for depression. Tr. at 243, 336.

12. In 1995, Plaintiff saw Dr. Zimberoff, a licensed psychologist. When Ms. Brewer was asked what specifically interfered with her inability to work, she stated the problem was short-term memory loss. Yet Dr. Zimberoff stated that Plaintiff "easily follows instructions," and that her short-term memory was "fairly good," also noting that there were "no signs of pain behavior or unusual fatigue," although Plaintiff complained of these symptoms as well. Tr. at 258-59. In his decision, the ALJ noted that Plaintiff told Dr Zimberoff that she babysits five grandchildren,

ranging in age from ages 3 through 12.[3]

13. In May,1996, Carmen Martin Lara, Ph.D. conducted a battery of psychological tests, including the WAIS-R, a Mental Status Test and the MMPI. The psychological report contained a diagnosis of malingering, stating that Plaintiff showed clear signs of additional gain by feigning mental illness. Tr. at 344-354. Dr. Lara's diagnosis did not simply comment on Plaintiff's malingering, but solidly relied on objective and reliable psychological data in presenting this opinion.

14. According to the report, Plaintiff manipulated the data and had a "fake bad" profile. In other words, like other patients who obtained similar scores on these by "deliberately faking" the responses on these tests, she was "motivated to appear inadequate" or "incompetent," and sought to "escape responsibilities through apparent psychiatric disability." Tr. at 38, 352. Dr. Lara noted that Plaintiff's complaints were about "lack of memory and concentration," but when it was suggested that these symptoms could be related to medication side effects, Plaintiff became "very angry and hostile," and defensive when questioned about a diagnosis of Major Depression. Tr. at 347. Dr. Lara also opined that Ms. Brewer was possibly abusing prescription medication and recommended an evaluation by a psychiatrist for this.

15. Although the ALJ considered all medical reports, he disregarded all of them and instead relied on Dr. Lara's report in determining Plaintiff to be malingering.[4] Plaintiff argues that

---

[3] At the 1997 hearing, she told the ALJ that she "shared" her time living with her different children and that some of them have younger children who "agitated" her. Tr. at 97, 102.

[4] The ALJ recognized that although malingering is not a recognized mental impairment under social security regulations, the diagnosis was nevertheless consistent with Plaintiff's motivations in this case: e.g., avoiding work, obtaining financial compensation, or obtaining drugs. Tr. at 40, n.2 and accompanying text.

the ALJ erred in relying on the report of this one-time visit in determining that Plaintiff's alleged mental impairments were not severe. However, the ALJ is entitled to reject opinions of treating physicians where they are not supported by specific findings, or when they are unsupported by or inconsistent with other objective evidence of record. See Hamilton v. Sec'y of HHS, 961 F.2d 1495, 1498 (10th Cir. 1992); Castellano v. Sec. of Health & Hum. Serv., 26 F.3d 1027, 1029 (10th Cir. 1994); 20 CFR § 416.925, 404.1527(d).

16. Defendant's arguments on this issue are well-taken. As the Appeals Council noted, Dr. Abbot is a family practitioner, whereas Dr. Lara is a specialist in the evaluation of mental impairments. Tr. at 6. Specialist's opinions are accorded more weight. See Goatcher v. Dep't of Health & Hum. Serv., 52 F.3d 288, 289 (10th Cir. 1995); 20 C.F.R. §§ 404.1529(d)(5) & 416.927(d)(5)(1995). Also, the ALJ gave specific reasons for disregarding or discounting Dr. Abbot's opinion. See Sorenson v. Bowen, 888 F.2d 706, 711 (10th Cir. 1989) (ALJ must give specific, legitimate reasons for disregarding opinion of the claimant's physician).

17. I find that the ALJ's determination regarding Ms. Brewer's mental impairments is supported by the evidence. In addition to Dr. Lara's report, Plaintiff was being treated for her depression with some success, see Tr. at 256, and Dr. Zimberoff's report provides another basis for an inconsistency between Plaintiff's allegations of a disabling mental impairment and the objective medical evidence.

18. The ALJ called on a medical consultant at the first hearing.[5] This medical expert reviewed the record and opined that Plaintiff's mental impairment came under an affective

---

[5] Plaintiff was not present at the March 5, 1996 hearing, but did attend a subsequent hearing scheduled for July 9, 1997.

disorder, under § 12.04 in the listings; a sleep disorder, decreased energy, feelings of guilt or worthlessness, difficulty concentrating with memory loss, and irritability.  Tr. at 63,  However, in assessing Plaintiff's mental residual functional capacity, the expert stated that these impairments posed no limitations for most areas of functioning, with a moderate limitation on an ability to understand and remember detailed instructions and only a mild limitation on an ability to maintain attention and concentration for extended periods  Tr. at 66-67; 366-67.

      19.  Based on the record, the expert testified that Plaintiff's mental impairment was mostly mild to moderate.  He acknowledged that Dr. Abbot's report indicated a moderate to severe depression, but was "not sure what all criteria he used" to come to that conclusion.  Tr. at 68 -68.  When questioned by Plaintiff's attorney, the medical consultant stated that based on Dr. Abbot's reports, Plaintiff would experience moderate depression every two to three months which could last a week or more, and that this could intensify the symptoms related to areas of functioning.  Tr. at 69.  Specifically, Plaintiff's ability to maintain attention and concentration would move to a moderate to perhaps marked level; ability to perform activities within a schedule would go from "not limited" to "moderately limited," and the ability to both complete a normal workday and interact appropriately with the general public would "probably" be moderately limited.  Tr. at 69, 367.

      20.  There is some confusion over whether the special procedures discussed in Cruse applies to this case.  Although Defendant argues that it does not, it appears to me that the ALJ nevertheless followed them to the letter, but in the end deciding that they did not have any significant effect on Plaintiff's ability to work.  Under the relevant social security regulations, 20 C.F.R. § 404.1520(b), a claimant's ability to function in four work-related areas are examined,

7

corresponding to Part B of the listed impairment.  See § 12.04 (affective disorders).  Ratings of "none" or "slight" in the first and second of the essential work-related functions, "never" or "seldom" in the third, and "never" in the fourth, dictate a finding that the impairment is not severe.

21.   In this case, the PRT completed by the DDS reviewer as well as the medical expert showed that Plaintiff's mental impairment would be considered "not severe."  Tr. at 144, 364.  The ALJ's conclusion that Plaintiff's depression or other alleged mental impairments did not meet a listed impairment is supported by the medical evidence.  See  20 C.F.R. Subpart B, App. 1, § 12.04 (Part B).   However, because an impairment may be severe enough to have a significant effect on a claimant's ability to work, even if it is not considered a listed impairment, special procedures would require an assessment of Plaintiff's mental RFC.  The ALJ had the medical consultant do this, and even included the alleged impairments in one of the hypotheticals to the vocational expert, Tr. at 111-12, although in the end the ALJ disregarded the inclusion of the mental impairments based on his findings regarding Plaintiff's malingering.[6]

22.  Accordingly, relief should be denied on this alleged error.  I find that the ALJ did not err in his assessment of Plaintiff's mental impairment, either in the conclusion that the diagnosis of malingering allowed him to disregard Plaintiff's subjective complaints and Dr. Abbot's reports, or in the finding that Plaintiff's depression was not severe and did not affect Plaintiff's ability to engage in other work.

**Third Alleged Error**

23.   Plaintiff contends that the ALJ improperly evaluated Plaintiff's complaints of

---

[6] A determination of mental RFC is "crucial to evaluation of an individual's capacity to engage in substantial gainful work activity."  Cruse, 49 F.3d at 618.

disabling pain, which relates to the ALJ's finding of noncredibility in Plaintiff's allegations that she could not work because of her Valley Fever symptoms of joint and back pain. A claimant's subjective complaint of pain is by itself insufficient to establish disability. See Talley v. Sullivan, 908 F.2d 585, 587 (10th Cir.1990).

24.   Contrary to Plaintiff's assertions, the ALJ properly analyzed Ms. Brewer's allegations of pain, such as "the entire case record, including the objective medical evidence, the individual's own statements about symptoms, statements and other information provided by treating or examining physicians or psychologists and other persons about the symptoms and how they affect the individual, and any other relevant evidence in the case record." SSR 96-7p. Pain that is disabling must be so severe, by itself or in conjunction with other impairments, so as to preclude any substantial gainful employment. Brown v. Bowen, 801 F.2d 361, 362 (10th Cir. 1986).

25.   The ALJ found that Plaintiff "exaggerates" her allegations of pain and "prevaricates her symptoms and description of pain." Tr. at 45. The ALJ was entitled to make this conclusion, because it was based on the evidence in the record, which included physician's reports concerning Ms. Brewer's pain symptoms, Plaintiff's daily activities and the inconsistency of her testimony and complaints with the objective evidence, including that of Drs. Davis and Tucker. Tr. at 233, 243, 420. For example, Dr. Tucker opined that "depression. . . probably explains most of [Plaintiff's] symptoms." Tr. at 234. Moreover, according to her own testimony, Plaintiff stopped working not because of her Valley Fever symptoms, but because of the stress and making too many mistakes. See Musgrave v. Sullivan, 966 F.2d. 1371, 1376 (10th Cir. 1992) (Commissioner properly discounted claimant's nonexertional impairment complaints due to lack of corroborative

9

evidence and consulting physician's suspicion that claimant was malingering).[7]

26. Thus, I find no error by the ALJ relating to Plaintiff's complaints of disabling pain.

**Fourth Alleged Error**

27. Plaintiff asserts that the ALJ incorrectly concluded that Plaintiff could perform light work. The thrust of the argument is that there is no evidence in the record that Ms. Brewer can perform light work. Plaintiff is correct that Dr. Davis' treatment of Plaintiff concerned surgery and post-operative follow-up for a cholecystectomy, Tr. at 416-20, and should not be used as a basis for Plaintiff's ability to work due to her other conditions.

28. However, I find that Dr. Tucker's reports do not indicate that Plaintiff cannot perform light work, or at least sedentary work (under the grids, Plaintiff would be found *not* disabled on *either* basis with transferable skills, see § 201.07, and § 202.07). Dr. Tucker's statement that Plaintiff has been disabled due to her symptoms of cough, fatigue, weight gain and insomnia is not a sufficient basis for a finding that she does not have the RFC for light work. Tr. at 233. The Commissioner, not a physician, is responsible for examining medical source opinions and making the determination on whether claimant meets statutory definition of disability. See Castellano v. Sec'y of HHS, 26 F.3d 1027, 1029 (10th Cir. 1994); SSR 96-5P (determination of disability is function reserved solely to the Commissioner); 20 C.F.R. § 404.1527(e)(1).

29. Ms. Brewer stated that she could stand 30 minutes, sit 30 minutes, walk up to 1½ blocks, and lift 5 to 10 pounds frequently. Tr. at 91-92. Dr. Gerald Gardner, a DDS reviewer, completed an RFC assessment based on the evidence, which resulted in the finding that Plaintiff

---

[7] Plaintiff testified that short-term memory loss and loss of concentration caused her to make mistakes at work which resulted in termination. Tr. at 90, 94, 99-100, 101.

could perform light work.[8]  While Dr. Tucker's reports, upon which Plaintiff relies, describes and discusses Ms. Brewer's chief complaints, they do not suggest that Plaintiff is limited or otherwise precluded from doing light work, as indicated in the RFC assessment.  Therefore, I find that the ALJ correctly concluded that Plaintiff could do light work.

**Fifth Alleged Error**

30.  Plaintiff alleges that the ALJ erroneously found that Plaintiff could perform work above her RFC level.  Plaintiff's contention here is based entirely on a misconception regarding Plaintiff's previous work as a licensed practical nurse.  Plaintiff argues that Ms. Brewer does not have the RFC to work as a Telemetry Monitor because she previously worked at a job that has a lower vocational profile, and therefore does not have the necessary transferable skills.  The Dictionary of Occupational Title ("DOT") categorizes jobs according to vocational preparation level (or "SVP"), using different prefix numbers to indicate the level.  The higher the SVP number, the longer the training period is to learn the skills for that occupation.

31.  According to the vocational expert ("VE") who testified at the hearing, Plaintiff could perform work as a telemetry monitor, which has an SVP of 5.  Tr. at 110.  She stated that there are about 1,000 such jobs in the region and 30,000 nationally.  Tr. at 110-111.  Plaintiff

---

[8]  Light work involves lifting no more than twenty pounds at a time with frequent lifting or carrying of objects weighing up to ten pounds, requires a good deal of walking, standing, or pushing and pulling when sitting is involved.  SSR 83-10; 20 C.F.R. § 404.1567(b), 416.967(a) (1986).  The full range of light work requires standing or walking, off and on, for a total of approximately 6 hours of an 8-hour workday.  Sitting may occur intermittently during the remaining time.  Id.

Sedentary work involves lifting no more than ten pounds at a time, no more than two hours of walking and standing a day, and a total of six hours of sitting a day.  SSR 83-10; 20 C.F.R. § 404.1567(a).

maintains that the previous nursing experience belonged in the DOT category of # 354.374.010 with an SVP of 4. Because her previous work experience was at a lower skill level than that of a telemetry monitor, and skills cannot transfer to a higher level, see 20 C.F.R. § 404.1568(d)(2), SSR 82-41, Plaintiff cannot perform that work and is disabled under the grids.

32.   However, at the hearing, the vocational expert ("VE") based her opinion on the assumption that Plaintiff's previous work as an Licensed Practical Nurse ("L.P.N.") was at an SVP level of 6 instead of 4 -- looking at the DOT entry # 354.374-010.   Although counsel withdrew her objection at the hearing, Tr. at 109, she now returns with the argument, which is misplaced, since the two DOT entries related to practical nurses are easily distinguishable in this case.  The lower SVP level of 4 is for "Nurse, Practical." DOT # 354.374-010.  The higher SVP level of 6 is for "Nurse, *Licensed* Practical." DOT # 079.374-014 (emphasis added).  The record, including Plaintiff's statements and description of her past job duties, is consistent with the fact that Ms. Brewer worked as an LPN, Tr. at 98, 195.  Despite counsel's persistent efforts to "downgrade" Plaintiff's previous nursing experience, Tr. at 93, clearly the DOT nursing occupation with the SVP of 6 was correct.

33.   At the hearing, Plaintiff stated that she did telemetry work for two years, but "not enough to be comfortable with it." Tr. at 106.  Nevertheless, she performed that work for two years as part of her former job, and obviously has the skills and qualifications for this work.  Her ability to do this work is consistent with the ALJ's finding that Plaintiff does not have the RFC to perform her past work because telemetry was only one part of her former job - the sedentary

aspect. This allegation should be dismissed as having no merit.[9]

**Sixth Alleged Error**

34. Plaintiff contends that the hypothetical questions the ALJ posed to the vocational expert were incomplete, specifically that the hypothetical disregarded Plaintiff's mental impairment. The VE opined that an inability to remember both simple and complex instructions over time would eliminate all jobs.

35. There is no merit to this allegation because the ALJ properly disregarded the allegations of mental impairment, as described above. See Hargis v. Sullivan, 945 F.2d 1482, 1491 (10th Cir. 1991) (testimony elicited by hypothetical questions that do not relate with precision all of a claimant's impairments "cannot constitute substantial evidence to support the [Commissioner's] decision"). The ALJ made conclusions regarding Plaintiff's mental abilities, Tr. at 41, and gave reasons supported by the record for discounting Plaintiff's mental impairments. Thus, he was justified in excluding those impairments from consideration

**Seventh Alleged Error**

36. Plaintiff contends that she should be found disabled based on the grids. The crux of this argument is based on whether or not Plaintiff is found to have transferable skills, and relates to the discussion under the fifth alleged error. Because I have found that Plaintiff's skills are indeed transferable, this allegation needs no further discussion.

37. In sum, I find that (1) the ALJ did not misstate the issue in this case, and if he did, the

---

[9] The ALJ erroneously referred to the DOT nursing occupation as "Nurse Practitioner," DOT 075.274.010, which requires intensive medical training and involves some dispensing of primary care. Tr. at 45, n.3. However, this error in job title is harmless, since the ALJ based the findings themselves on the appropriate job description and on the vocational testimony that used the correct job title.

error is *de minimis*; (2) the ALJ properly assessed Plaintiff's Mental Impairment; (3) the ALJ properly evaluated Plaintiff's complaints of disabling pain; (4) the ALJ correctly concluded that Plaintiff could perform light work; (5) the ALJ correctly found that Plaintiff could perform work above her RFC level; (6) the hypothetical questions the ALJ posed to the vocational expert were complete; and (7) Plaintiff should not be found disabled based on the grids.

## Recommendation

I recommend that Plaintiff's Motion to Reverse and Remand for a Rehearing **[docket # 6]** be DENIED and that this cause of action be DISMISSED WITH PREJUDICE. Timely objections to the foregoing may be made pursuant to 28 U.S.C. § 636(b)(1)(C).

_____
UNITED STATES MAGISTRATE JUDGE